FILED

IN THE FEDERAL DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

2009 JAN 15  PM 3: 16

CASE NO.

5: 09 -cv-41-0c-10 GRJ

CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

NORMA SPENCE,

        Plaintiff,

v.

OCALA NATIONAL BANK, DOES 1-100
AND TRUSTEES 1-100,

        Defendants.

_____/

## **COMPLAINT FOR RESCISSION OF MORTGAGE AND FOR DAMAGES**

    The Plaintiff, NORMA SPENCE , (hereinafter the "Plaintiff"), by and through their

undersigned counsel, sues; , Does 1-100 and Trustees 1-100 (hereinafter the "Defendants"), and

states as follows:

### **Jurisdiction and Venue**

    1.    This Court has jurisdiction over the parties and subject matter herein, because the

subject property is located in the State of Florida.

    2.    This Court has jurisdiction over the claims pursuant to (a) The Federal Truth-in-

Lending Act, 15 U.S.C. §1601, et. seq. (hereinafter, "TILA"), and (b) the Real Estate Settlement

Procedures Act, 12 U.S.C. §2601 et. seq. (hereinafter, "RESPA").

    3.    This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331

and 1337.

4.      Supplemental jurisdiction is proper of the state law claims set forth herein under 28 U.S.C. § 1367(a).

5.      Venue is proper under 28 U.S.C. § 1391(b)(2); and 28 U.S.C. § 1391(c), as the Plaintiff's property and the property secured by the Note and Mortgage at issue, is located at 9695 SW 42nd Avenue, Ocala, Florida 34476, (hereinafter, "the Property"), which is within this District. Further, the Defendants conducted business within this District, and the acts and transactions that constitute the violations of law, including the Defendants' fraudulent bait and switch conduct, fraudulent high pressure closing and the failure to disclose material information regarding the subject mortgage loan as required by both TILA and RESPA, occurred in this District.

## General Allegations

6.      The Plaintiff is a borrower who entered into a consumer credit transaction (hereafter the "Mortgage Loan") with the Defendants for a principal amount of $229,900.00, and are otherwise sui juris.

7.      The Defendants are and were at all times material to a banking financial institution, mortgage company and/or loan servicing provider incorporated in the State of Florida with its principal place of business at 112 Magnolia Avenue, Ocala, Florida 34471-1154

8.      The Defendant, Ocala National Bank, is and was at all times material, a banking financial institution, mortgage company and/or loan servicing provider registered to do business in the State of Florida.

9.      The Defendants Does 1-100 are and were at all times material, to a banking financial institution, mortgage company and/or loan servicing provider registered to do business in the State of Florida.

10.    The Defendants, Trustees 1-100, are and were at all times material, to a banking financial institution, mortgage company and/or loan servicing provider registered to do business in the State of Florida.

11.    The Defendants, individually and/or through their agents and brokers originate mortgage loans throughout the United States, including Marion County, Florida which is within the District of this Court.

12.    The Defendants operate as a mortgage lender, servicer and/or broker. The Defendants through various nationwide brokers and agents directly market, advertise, solicit, broker and/or service mortgage loans.

13.    At all times relevant hereto, the Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed, by written agreement, is payable in more than four installments, and are the persons to whom the mortgage loan, which is the subject of this action, are payable, making Defendants creditors within the meaning of 15 U.S.C. §§ 1601, 1602(t) and Regulation Z § 226.2(a)(17).

14.    The Defendants individually and/or through their agents and/or brokers prepare and complete loan applications for mortgage loans, including the mortgage loan issued to the Plaintiff. As part of the completion of the lending process, the Plaintiff's loan application is submitted to the Defendants' underwriters for approval.

15.    The Plaintiff applied for a mortgage loan with the Defendants.

16.    On or about September 16, 2005, the Plaintiff closed on the mortgage loan for a principal amount of $229,900.00.

17.    Pursuant to the mortgage loan transaction, the Defendants retained and/or acquired a security interest in the Property.

18.    During the application process and prior to the closing of the loan, the Plaintiff provided the Defendants with verification of income, including but not limited to, bank statements and other information regarding the Plaintiff's household income including oral verification of income in the amount of $1,030.00 per month.

19.    The Defendants individually and/or through their broker and/or agent that facilitated the loan transaction, fraudulently increased and grossly overstated the Plaintiff's income, qualifying the Plaintiff for a higher loan than their verifiable income could support.

20.    The Defendants individually and/or through brokers and/or agents used a fraudulent bait and switch tactic.  The Defendants stated that the loan terms were substantially and materially more competitive at the time of the initial application on through to the day of closing, where the title agent rushed the Plaintiff to execute the documents.  The Plaintiff had only minutes to review and understand over one hundred (100) pages of documents that were pre-tabbed for the location of the Plaintiff's signature.  The whole proceeding, from the time Plaintiff entered the closing room to when the Plaintiff left took less than one (1) hour or forty-five (45) seconds per page.  When the Plaintiff began to ask questions about the mortgage documents being signed, Plaintiff was told what the new mortgage terms would be.  The Plaintiff did not agree to these terms and not all of the terms were clearly disclosed at the time.  Furthermore, the Plaintiff was told that if the documents were not signed that day then the money would be forfeited and that the Plaintiff would be responsible for the payment of other financial obligations, which included the loss of the application fees and deposit along with the obligation to pay other amounts associated with the transaction.

21.    The mortgage loan was designated by the Defendants as loan number .

22. Before the settlement date, the Defendants did not provide the Plaintiff with the correct and timely preliminary disclosures required by TILA at 12 CFR §§ 226.4, 17, 18, and 12 CFR §§ 226.5 and 226.5(b), or any other correct preliminary disclosures as required by RESPA at 12 U.S.C. § 2604(c).

23. The Defendants did not timely provide the Plaintiff with an executed copy of the Good Faith Estimate ("GFE") of the anticipated costs associated with the mortgage loan, as required by RESPA, 12 U.S.C. § 2603; 12 CFR § 3500.7.

24. Furthermore, the Plaintiff was told that if they signed, the Defendant would refinance the Plaintiff out of the gratuitous terms into a lower fixed rate.

25. The Plaintiff was charged unknown and undisclosed yield spread premium ("YSP") at the time of the closing.[1]

26. The Defendants failed either before, during and/or after the closing of the mortgage loan to provide the Plaintiff with true and accurate copies of important documents, including, but not limited to, copies of the Lock-In Agreements executed between the lender's agent and the lender which noted the "YSP" paid by the lender to the lender's agent, copies of the original application submitted to the lender that generated the approval, and copies of other pertinent documents that were executed by the Plaintiff at or before the closing.

---

[1]    Federal Reserve Chairman Ben S. Bernake has questioned the use of YSPs because "[m]any consumers use mortgage brokers to guide them through a complex process and shop for the best deal. Unfortunately, consumers may believe that the broker has a responsibility to get them that best deal, which is not necessarily the case. In fact, the design of YSPs may provide the broker a financial incentive to offer a loan with a higher rate. Consumers who do not understand this point may not shop to their best advantage. Therefore, we would prohibit a lender, for both prime and Alt-A loans, from paying a broker an amount greater than the consumer agrees to in advance. Brokers would also have to disclose their potential conflict of interest." See Ben S. Bernake, Chairman, Board of Governors of the Federal Reserve System, Address at the National Community Reinvestment Coalition Annual Meeting: Fostering Sustainable Home ownership (March 14, 2008)(transcript available at the Board of Governors of the Federal Reserve System).

27.    The following are certain of the specific discrepancies and irregularities, among others, within the Plaintiff's loan documents, including:

  a.  The Plaintiff paid an unknown and undisclosed "YSP", which is reflected in the increase in the interest rate, and terms of the note.

  b.  As a result of the yield-spread premium, the Plaintiff incurred daily excess interest the total amount of which has yet to be determined.

28.    The charges identified above are each violations of TILA, RESPA, and Florida statutes in that they resulted in Plaintiff paying excess fees and interest for services that were either never performed, improperly disclosed or excessive.

29.    At no time did the Defendants provide the Plaintiff with a contract or agreement setting forth the improper charges. The Plaintiff is not in possession of the original handwritten loan application taken at the time of the application allegedly manipulated and held by the Defendant at the time of closing.

30.    Nothing in the loan applications disclose or authorized the improper charges, including the yield-spread premium.

31.    The Defendants did not provide the Plaintiff with a copy of the HUD-1 at the time of closing or 24 hours prior to closing.

32.    This made it impossible for Plaintiff to be fully informed of the true cost of the loan, or understand the fees and charges.

33.    The Plaintiff did not understand and were not previously disclosed that they would receive a Fixed 10.320%.

34.     Pursuant to TILA and RESPA, Defendants had an obligation to the Plaintiff to disclose all material facts concerning the mortgage loan transaction that might affect the Plaintiff's decision to accept the loan.

35.     The Defendants established a pattern and practice of harming the Plaintiff, in that during the entire life of the mortgage loan transaction, Defendants have not correctly credited payments or calculated interest on the account due to the inaccurate disclosures.

36.     The Defendants knew that the accounting of the transaction was not accurate and that the Plaintiff was unaware that the interest was inaccurately calculated and collected.

37.     The Plaintiff did make payments based on the account and paid too much as a result.

38.     The Defendants provided the Plaintiff a home loan with a monthly payment amount that caused the Plaintiff's debt to income ratio to exceed fifty percent (50%).

39.     The Defendants knew or should have known that providing the Plaintiff with a loan that exceeded a debt-to-income ratio of fifty percent (50%) would greatly increase the likelihood of the Plaintiff failing to make monthly payments.

40.     The Defendants provided the Plaintiff with excessively high loan-to-value financing for the Property and that left no cushion for declining home prices and greatly limited the ability of the Plaintiff to refinance.

41.     The Defendants placed the Plaintiff into a mortgage loan making it impossible for the Plaintiff to refinance, because if home prices fell and credit markets tightened with additional costs to refinance along with prepayment penalties, the loan request would be denied.

42.     As a result of the Defendants providing the Plaintiff with a mortgage loan that had an excessive debt-to-income-ratio, an excessively high loan-to-value, along with an unknown

and undisclosed prepayment penalty, t+he Defendants knew or should have known that the Transactions would fail if the housing market declined, making the loan unfair and deceptive under Florida law and insufficiently explained under TILA.

43.     As a result of the Defendants dumping the real estate it owned into the market, the Defendants have eroded the value of the Plaintiff's home.

44.     As a result of the Plaintiff's inability to negotiate a reasonable loan modification, the Plaintiff stopped making payments under the mortgage loan and asserted their claims.

45.     A creditor is prohibited from making negative reports to consumer reporting agencies regarding a borrower who is disputing the accuracy of payments made to the lender, as required by the Fair Credit Reporting Act (the FCRA"), 15 U.S.C. §§ 1681, 16810 et seq. and RESPA, 12 U.S.C. § 2605(e)(3).

46.     The Defendants have made negative reports of the Plaintiff's credit, in violation of FCRA and RESPA, causing financial harm to the Plaintiff.

## Count I - RESPA, 12 U.S.C § 2601 et Seq., and Hud's Regulation X (24 C.f.r. § 3500)

47.     The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

48.     The Defendants individually and/or through their brokers and/or agents provided the Plaintiff with the Good Faith Estimate (hereafter "GFE") with respect to the subject mortgage loan.

49.     The GFE failed to timely provide the Plaintiff with full disclosure regarding the nature and the cost of the loan in violation of the RESPA, 12 U.S.C. § 2601, et. seq. and 24 C.F.R. § 3500 et. seq.

50.    In violation of RESPA, 12 U.S.C. § 2604(c), and 24 C.F.R. §3500.7(b) and (c), the Defendants failed to provide the Plaintiff with a GFE disclosing the amount or range of settlement charges with respect to the subject loan within three (3) days of the loan application.

51.    In violation of RESPA, 12 U.S.C. § 2604(c), and 24 C.F.R. § 3500.7(c), prior to the closing of the subject loan, the Defendants failed to provide the Plaintiff with a GFE disclosing the fact and the amount of any "YSP" associated with the subject loan.

52.    In violation of RESPA, 12 U.S.C. § 2605(b) and (c), and 24 C.F.R. § 3500.7(c), the Defendants failed to provide the Plaintiff with the required fifteen (15) day notice of change of loan servicer upon the assignment of the loan.

53.    As a direct and proximate result of the Defendants' violation of and/or failure to comply with the disclosure requirements of RESPA and HUD's Regulation X, as set forth above, the Plaintiff has suffered the following damages:

a.    Actual loss for all unnecessarily high settlement charges incurred by the Plaintiff, including but not limited to, the unknown and undisclosed "YSP" due to the Defendants' failure to comply with RESPA, 12 U.S.C. § 2604(c) C.F.R. § 3500 et. seq.

b.    Attorneys' fees and costs pursuant to 12 U.S.C. § 2605(t) (3).

WHEREFORE, the Plaintiff asks this Court for a judgment for damages against the Defendants for actual and/or consequential damages, attorneys' fees and costs.

## Count II- Rescission of Mortgage – Truth-in-lending Act ("TILA") Prior to Closing

54.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

55.    TILA, 15 U.S.C. § 1638(b)(1) mandates timely written disclosures of financing terms.

56.    The Federal Reserve Board of Governors Official Staff Commentary to Regulation Z, § 226. 17(a), (b), Supp.1. paras.. 17(a), 17(b), and § 226.19(a)(1) interpreting TILA, state in relevant part:

> 17(a) Form of Disclosures
>
> Clear and conspicuous. This standard requires that disclosures be in a reasonably understandable form. For example ... the disclosures must be presented in a way that does not obscure the relationship of the terms to each other.
> ***
>
> Paragraph 17(a) (2) Disclosures provided on credit contracts.
>
> Creditors must give the required disclosures to the consumer in writing, in a form that the consumer may keep, before consummation of the transaction.
> ***
>
> 17(b) Time of Disclosures
>
> Consummation. As a general rule, disclosures must be made before consummation of the transaction.
> ***
>
> 226.19(a) (1) Time of Disclosures.
>
> In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et. seq.) the creditor shall make good faith estimates of the disclosures required by section 226.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.

57.    The execution of the mortgage loan transaction on or about September 16, 2005, constituted the consummation of a consumer credit sale under TILA. 15 U.S.C. § 1602(g) and (h).

58.    The Plaintiff never received the TILA disclosures in a form they could review. The first time they received TILA disclosures was at closing.

59.    The Defendants violated well-established Federal law by failing to properly deliver all disclosures as required by TILA, RESPA and Regulation Z. 15 U.S.C. § 1638(b) (1); 12 U.S.C. § 2604; and Reg.Z § § 226.17 and 226.18.

60.    The Plaintiff suffered actual damages as a result of the Defendants' failure to provide the Plaintiff with copies of their loan documents and TILA disclosures.

61.    The Plaintiff was deprived of important financial information and was unable to make an informed decision about the credit provided to the Plaintiff.  As a result of failing to provide the Plaintiff with a copy of the retail installment contract prior to consummation, the Plaintiff was misled as to the true cost of their financing.

62.    Prior to the closing for the subject mortgage loan, the Truth-in-Lending Disclosure Statement that was provided to the Plaintiff by the Defendants was not clear and conspicuous.

63.    The inaccurate material disclosure regarding all loan charges associated with the mortgage loan is in violation of TILA, 15 U.S.C. § 1601 et. seq., and its implementing Regulation Z, 12 C.F.R. Part 226. Specifically, the Disclosure Statement failed to adequately disclose the following:

      a.    The annual percentage rate to be charged for the loan pursuant to TILA; 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226.18(e); and/or

      b.    The finance charge(s) for the loan pursuant to TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226.18(d); and/or

c.     The amount financed pursuant to TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226.18(b); and/or

d.     The total payments pursuant to TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226.18(h); and/or

e.     The payment schedule pursuant to TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226.18(g).

64.     The Defendants individually and/or through their agents and/or brokers further violated TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226 by engaging in the following pre-closing activities:

a.     Artificially inflating the Plaintiff's gross income to qualify them for a higher loan amount than their income could support; and/or

b.     Failing to deliver a HUD-1 Settlement Statement to Plaintiff within twenty-four (24) hours prior to closing of the loan; and/or

c.     Failing to disclose to the Plaintiff other closing expenses at the time the loan was closed.

65.     The Plaintiff has complied with all conditions precedent to the bringing of this action.

66.     Upon information and belief, the Plaintiff has suffered damages in an amount in excess of $75,000.00.

67.     As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

68.     As a direct and proximate result of the Defendants' failure to provide the Plaintiff with clear and accurate material disclosure regarding all charges associated with the subject mortgage loan in violation of TILA, 15 U.S.C. § 1601 et. seq., and Regulation Z, 12 C.F.R. Part 226, the Plaintiff has been damaged and is entitled to the following relief:

     a.    Rescission of the mortgage;

     b.    The voiding of the Defendants security interest in the Plaintiffs' property that is subject to the existing mortgage;

     c.    Actual damages for the amounts incurred by the Plaintiff due to the Defendants' violation of TILA, 15 U.S.C. § 601 et. seq., and Regulation Z, 12 C.F.R. Part 226, including but not limited to, the reimbursement of all mortgage payments, finance charges and interest paid to date by the Plaintiff. The reimbursement of the monies paid to the Defendants by the Plaintiff regarding the subject mortgage loan; and

     d.    Attorneys' fees and cost;

     e.    All other damages the Court may deem just, proper and equitable.

WHEREFORE, the Plaintiff demands judgment against the Defendants for rescission of the mortgage, actual and consequential damages, and attorneys' fees and costs.

The Plaintiff respectfully requests that the Court enter a judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs, including the fees and costs associated with litigating this claim, and granting such further relief as the Court deems just and proper.

## <u>Count III - Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA),§</u>

## <u>501.201 Et. Seq., Fla. Stat.</u>

69.      The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

70.      This is an action for damages brought pursuant to Florida's Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (2007)("FDUTPA").

71.      The Defendant, at all times material hereto, provided goods and/or services as defined within Section 501.203(8), Florida Statutes (2007).

72.      The Defendants, Does 1-100 at all times material hereto, provided goods and/or services as defined within Section 501.203(8), Florida Statutes (2007).

73.      The Defendants, Trustees 1-100 at all times material hereto, provided goods and/or services as defined within Section 501.203(8), Florida Statutes (2007).

74.      The Defendants, at all times material hereto, solicited consumers within the definitions of Section 501.203(7), Florida Statutes (2007).

75.      The Defendants, Does 1-100 at all times material hereto, solicited consumers within the definitions of Section 501.203(7), Florida Statutes (2007).

76.      The Defendants, Trustee 1-100 at all times hereto, solicited consumers with the definitions of Section 501.203(7), Florida Statues (2007).

77.      At all times relevant hereto, the Defendants controlled the documents underlying the mortgage loan transaction, as well as the fees, charges and expenses related thereto.

78.     To foster a culture of loan approvals regardless of the borrower's capacity to pay, Defendants compensated their underwriters with bonuses. The Defendants' underwriters therefore had incentives to approve as many loans as possible, regardless of credit risk.

79.     The Defendants had no procedures or rigid guidelines on how "no documentation or reduced documentation" Alt-A Loans were to be approved.   It was the underwriters' responsibility to make the loan work, regardless of whether or not the loan fit the professed underwriting standards.

80.     The Defendants made Alt-A Loans to borrowers when they knew or should have known that the borrowers would not be able to repay the loan due to excessive interest rate(s) and terms that were unaffordable based on the Plaintiff's actual income and obligations, as disclosed by the Plaintiff at the time of the initial application.

81.     In furtherance of its policy to place the generation of consumer loans (and maximization of its profits) above concerns about the consumer's ability to meet their loan obligations, the Defendants made material misrepresentations to consumers relating to its Fixed 10.320% by:

    a.   Misrepresenting that the loan they received would excessively enrich the Plaintiff; and/or

    b.   Misrepresenting the interest rates on the loans as being the best possible loan that the Plaintiff could receive with the Plaintiff's credit score; and/or

    c.   Misrepresenting the manner and degree in which payments would substantially increase the Plaintiff's monthly obligations subsequent to the closing, and/or;

d.   Employing and advertising extremely low rates and payments at the time of accepting the initial application, and then failing to properly disclose the final terms to the Plaintiff until the actual closing. The terms received were beyond the capacity of the Plaintiff's income and asset qualifications, given the financial income/information provided from the Plaintiff to the Defendants.

82.   The aforesaid misrepresentations were either direct and/or the result of hiding, and/or the material terms were not sufficiently disclosed to the consumer prior to the closing of the loans.

83.   The Defendants employed deceptive marketing practices in an attempt to influence and steer unwary consumers toward the purchase of risky and costly mortgages and home loans.

84.   The Defendants failed to afford borrowers the opportunity to avail themselves of alternate loan options, certain of which carried lower rates of interest, margins and prepayment alternatives or loan choices. Thus, Defendants made Alt-A Loans to borrowers when they knew or should have known that the borrowers were qualified for alternate loans at lower rates of interest or not qualified for the loan that they were ultimately provided.

85.   The Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing to borrowers that the Defendants' review of the Alt-A Loan applications, either expressly or impliedly, was done in accordance with underwriting standards to confirm that the borrowers were able to repay the loans pursuant to their terms.

86.   The Defendants violated Chapter 501, Part II, Florida Statutes (2007), in part by representing to borrowers that the Defendants' closing and funding of the borrowers' Alt-A Loan

mortgages, either expressly or impliedly, confirmed that the borrowers were able to repay the loans pursuant to its terms.

87.    But for the misrepresentations of the Defendants' services in the consumer lending transaction with the Plaintiff, the Plaintiff would not have sustained any related damages and would not have entered into the mortgage loan transaction.

88.    The Defendants stand responsible for those misrepresentations and the related damages by virtue of their claim of owning and holding the note(s) and related lien(s) under the mortgage loan transaction.

89.    The Defendants' violation and/or failure to comply with the disclosure requirements of RESPA and HUD's Regulation X, in combination with the fraudulent inflation of the Plaintiff's income, constitute an unfair and deceptive business practice under FDUTPA, Fla. Stat. §501.203 et. seq.

90.    The Defendants' violation and/or failure to provide the Plaintiff with clear and accurate material disclosure regarding all charges associated with the subject mortgage loan, the Defendants other actions in violation of TILA, 15 U.S.C. § 1601 et. seq. and Regulation Z, 12 C.F.R. Part 226, and knowingly inflating Plaintiff's income to meet the underwriting requirements to secure the loan, constitute an unfair and deceptive business practice under FDUTPA, Fla. Stat. §501.203 et. seq.

91.    As a direct and proximate result of the Defendants' unfair and deceptive business practice under FDUTPA, Fla. Stat. § 501.203 et. seq., the Plaintiff has been damaged, and is entitled to the following damages:

    a.    Actual losses sustained by the Plaintiff, due to the unfair and deceptive business practices of Defendants; and

b.    Attorneys' fees and costs pursuant to 501.211(2); and

c.    Such further relief as this honorable Court may deem just and proper.


WHEREFORE, the Plaintiff respectfully requests that this Court enter Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, attorneys' fees and costs, including the fees and costs associated with litigating this claim, and granting such further relief as the Court may deem just and proper.


## Count IV - Second Violation of Florida Deceptive and Unfair Trade Practices Act

## (FDUTPA), § 501.201

92.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

93.    As a result of the Defendants providing the Plaintiff with a home loan that had excessive debt-to-income ratios, excessive loan-to-value financing and a prepayment penalty, the mortgage loan transaction was unfair, insomuch as the success of the loan relied upon the fair market value of the property consistently increasing or the income of the Plaintiff increasing dramatically during the life of the mortgage loan and not on the Plaintiff's ability to repay the loan when it closed.

94.    The Defendants knew or should have known that the mortgage loan transaction would fail, making the loan unfair under Florida law and insufficiently explained under TILA.

95.     But for the misrepresentations of terms and bases for issuing the loan, the Plaintiff would not have sustained any related damages and would not have declined to enter into the transaction.

96.     The Defendants are responsible for the damages caused by their unfair lending practices that they knew, or should have known, would lead to the Plaintiff's' inability to repay or refinance the Transaction.

97.     The Plaintiff has suffered damages in an amount in excess of $75,000.00.

98.     As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and the Plaintiff is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment against the Defendants, awarding Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs, including the fees and costs associated with litigating this claim, and granting such further and other relief as this Court may deem just and proper.

## Count V - Fraud

99.     The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

100.    Defendants individually and/or through or their agents made the following statements to the Plaintiff that were false and misleading prior to the closing of the mortgage loan at issue:

    a.   The annual percentage rate to be charged for the loan; and/or

    b.   The finance charge(s) for the loan; and/or

    c.   The amount financed; and/or

    d.   The total payments; and/or

    e.   The payment schedule; and/or

    f.   The length of loan and any adjustable rates; and/or

    g.   Loss of deposit; and/or

    h.   Rate lock being lost; and/or

    i.   Ensuring that it was the best loan possible or the only loan available.

101.    The Defendants individually and/or through their agents and/or brokers knew that the statements and terms set forth in paragraph 40 were false and/or materially misleading.

102.    The Defendants' intent in making these false and materially misleading statements was to induce the Plaintiff to act on them and accept the terms of the loan transaction.

103.    The Plaintiff relied on these false and misleading statements of the Defendants in consummating the loan transaction, which resulted in their financial injury and their being unable to satisfy the terms of the loan.

104.    As a result, the Plaintiff has been damaged in an amount in excess of $75,000.

WHEREFORE, the Plaintiff respectfully requests respectfully requests this Court to award damages in an amount in excess of $75,000 for compensatory damages and punitive damages, costs and such further and other relief that this court deems just and proper.

## **Count VI - Rescission**

105.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

106.    As a direct result of the fraudulent and misleading loan transaction set forth above, the Plaintiff and the Defendants entered into a contract for a loan and pledged a security interest in the property using a mortgage as collateral for the loan.

107.    The Defendants' actions as stated in paragraphs 26, 28, 30, 39 and 40 constitute fraud and entitle the Plaintiff to a rescission of the mortgage and cancellation of said security interest and mortgage on the property.

108.    The Plaintiff has no adequate remedy at law.

WHEREFORE, the Plaintiff respectfully requests a rescission of the mortgage and the cancellation of the security interest on its property, attorney's fees and costs and for this honorable Court to grant such further and other relief that it may deems just and proper.

### Count VII - Breach of Contract And Failure to Act in Good Faith

109.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

110.    Fla. Statutes § 679, et seq., requires that the Defendants act in good faith when dealing with the Plaintiff.

111.    Fla. Statutes § 679.625 provides remedies for a secured party's failure to comply with article 679 and states:

> (1)    If it is established that a secured party is not proceeding in accordance with this chapter, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions. This subsection shall not preclude a debtor other than a consumer and a secured party, or two or more secured parties in other than a consumer transaction, from agreeing in an authenticated record that the debtor or secured party must first provide to the alleged offending secured party notice of a violation of this chapter and opportunity to cure before commencing any legal proceeding under this section.

> (2)    Subject to subsections (3), (4), and (6), a person is liable for damages in the amount of any loss caused by a failure to comply with this chapter, including damages suffered by the debtor resulting from the debtor's inability to obtain, or increased costs of, alternative financing, but not including consequential, special, or penal damages, unless the conduct giving rise to the failure constitutes an independent claim under

the laws of this state other than this chapter and then only to the extent otherwise recoverable under law.

(3)    Except as otherwise provided in s. 679.628:
   (a)    A person who, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under subsection (2) for the person's loss; and

   (b)    If the collateral is consumer goods, a person who was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price.

112.    The Defendants' failure to disclose and provide Plaintiff with a market loan has caused the Plaintiff harm.

113.    The Defendants' unwillingness to negotiate the Plaintiff's home loan in good faith has caused the Plaintiff harm.

114.    The Defendants' dumping of real estate onto the market has eroded the Plaintiffs' home value such that the Plaintiff can no longer sell or refinance the home, all while simultaneously refusing to renegotiate a loan in good faith, caused the Plaintiff harm.

115.    As a result of the Defendants' failure to act in good faith and give proper disclosures as outlines above, the Defendants breached the agreements among the parties. As a result, the Plaintiff has suffered injury including damages for pain and suffering and emotional distress. The injuries are continuing in nature.

116.    Upon information and belief, the amounts of the Plaintiff's damages are currently unknown and will be established at the time of trial, but are in excess of $75,000.00.

117.    As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this

litigation.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, including attorneys' fees and costs associated with litigating this claim, and granting such further and other relief as the Court may deems just and proper.

### <u>Count VIII - Violation of the Fair Credit Reporting Act</u>

118. The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

119. At all relevant times in this lawsuit, the Defendants qualified as providers of information to credit reporting agencies under the FCRA and reported negative marks against the Plaintiff.

120. The Defendants knew the Plaintiff was disputing the mortgage loan transaction, yet the Defendants made negative reports on the Plaintiff's credit report.

121. The Plaintiff is entitled to maintain a separate cause of action against the Defendants for an award of damages in an amount to be proven at the time of trial for all violations of FCRA which caused actual damage to the Plaintiff, including emotional distress and humiliation, under 15 U.S.C. § 1681s-2(b).

122. The Plaintiff is entitled to recover damages from the Defendants for negligent noncompliance under 15 U.S.C. § 16810.

123. The Plaintiff is entitled to recover damages from the Defendants for making negative reports under FCRA and RESPA.

124. The Plaintiff is entitled to an award of punitive damages against the Defendants for willful non-compliance under 15 U.S.C. § 1681n(a)(2).

125.    The Plaintiff has suffered damages in an amount in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

126.    As a result of the Defendants' breaches, the Plaintiff has retained the legal services of the undersigned attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs associated with litigating this claim, and granting such further and other relief as the Court may deem just and proper.

## Count IX - Defendants May Not Be the Owners of the Note and Mortgage

127.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

128.    The Plaintiff believes that the Defendants may not be in possession of the note and mortgage underlying the mortgage loan transaction.

129.    The Defendants may not have standing to collect any monies owed under the mortgage loan transaction. See, In re Foreclosure Cases, Case No. 1 :07-cv-02282-CAB (N.D.OH dated October 31, 2007) (finding that without legal title to the residence, the lenders did not have standing to pursue their claims).

130.    The Plaintiff has suffered damages in an amount in excess of $75,000.00.

131.    As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs associated with litigating this claim, and granting such further relief as the Court deems just and proper.

### Count X - Breach of the Implied Covenant Of Good Faith and Fair Dealing

132.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

133.    There exists in law and all contracts a covenant of good faith and fair dealing.

134.    The Defendants breached their covenant of good faith and fair dealing as relating to the mortgage loan agreements by engaging in conduct described in this Complaint.

135.    As a direct and proximate result of the Defendants' misconduct, the Plaintiff has suffered actual, special, and consequential damages in excess of $75,000.00.

136.    As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs associated with litigating this claim, and granting such further relief as the Court deems just and proper.

### Count XI - Unjust Enrichment

137.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

138.    The Defendants charged the Plaintiff a "YSP", and as a result, the Plaintiff has paid an undetermined amount in excess interest.

139.    The Defendants are therefore in possession of money that belongs to the Plaintiff and have deprived the Plaintiff of their possession, use and enjoyment.

140.    As a direct and proximate result of the Defendants' misconduct, the Plaintiff has suffered actual, special, and consequential damages in excess of $75,000.00.

141.    As a result of the Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a Judgment against the Defendants, awarding the Plaintiff damages in the amount prescribed by law, awarding attorneys' fees and costs associated with litigating this claim, and granting such further and other relief as this Court may deem just and proper.

## **Count XII - Declaratory Relief**

142.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

143.    The mortgage loan transaction between the parties sets forth the respective rights and obligations of the various parties.

144.    The Plaintiff is entitled to a declaration from this Court that she was given an unfair loan or loans; therefore the mortgage loan transaction should be rescinded and declared null and void.

145.    The Court should declare that the Defendants are liable for all damages inflicted by their actionable conduct in providing the Plaintiff with unfair and deceptive mortgage loan

146.    As a result of Defendants' breaches, the Plaintiff has retained the legal services of attorneys and is entitled to recover reasonable attorneys' fees and costs of this litigation.

WHEREFORE, the Plaintiff respectfully requests this the Court enter a Judgment against the Defendants, finding that the Mortgage is null and void and awarding attorneys' fees and costs associated with litigating this claim, and granting such further and other relief as the Court may deem just and proper.

## **Count XIII - Equitable Tolling**

147.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

148.    The Defendants actively attempted to defraud the Plaintiff by exploiting their financial need and concealing material terms of the loan at issue. The Defendants at or before the time of closing falsely represented that the Plaintiff could refinance within roughly two years after said closing and falsely stated and represented that the lender would follow through on this promise to refinance.  As such, the Plaintiff did not learn of the falsity of Defendants' statements until the expiration of the two-year period when the Plaintiff was advised that the Plaintiff could not refinance their loan.

149.    The Defendants' causes of Action were concealed from the Plaintiff.  The Plaintiff was actively misled by the Defendants.  The Defendants concealed their misrepresentations from the Plaintiff pertaining to the options for services rendered and to whom the fees, as disclosed on the Settlement Statement, were being paid.   For example, it was never disclosed to the Plaintiff, nor was it apparent from the Settlement Statement, that fee sharing existed and that other concealed practices existed which included monies paid to and from the Settlement Services

Company, the Property Appraiser, the Mortgage Broker, the Mortgage Loan Processor, the Notary Services Agent, the Document Preparation Processor, and other inter-related company agents of the lenders and the associated services.

WHEREFORE, the Plaintiff respectfully requests a rescission of the mortgage and the cancellation of the security interest on its property, attorney's fees and costs and for this honorable Court to grant such further and other relief that it may deem just and proper.

## Count XIV - Credit Repair Organizations Act

150.    The Plaintiff avers all of the allegations in Paragraphs 1 through 47 above, and incorporates them by reference as though fully restated in this Count.

151.    Defendants violated the CROA by filling out the Plaintiff's loan application to overstate the Plaintiff's income and assets.

152.    § 1679(b) prohibits practices as follows:

(a)    In general.  No person may--

(1)    make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to

(b)    Any person--
(i) who has extended credit to the consumer; or
(ii) to whom the consumer has applied or is applying for an extension of credit....

153.    CROA §1679(b) provides:

1679(g) Civil liability

(a) Liability established. Any person who fails to comply with any provision of this title [15 USC §§1679 et seq.] with respect to any other person shall be liable

to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

Actual damages. The greater of the amount of any actual damage sustained by such person as a result of such failure in the case of any action by an individual, such additional amount as the court may allow....

a)    Appropriate damages;

b)    Rescission or reformation of Plaintiff's loan;

c)    Attorney's fees, litigation expenses and costs; and

d)    Such other and further relief that the Court deems just and equitable in the circumstances.

WHEREFORE, the Plaintiff requests that this Court enter a Judgment in favor of the Plaintiff against  for $ 75,000.00, their costs, attorneys' fees, and such further and other relief that this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by jury of all of the Plaintiff's claims so triable.

Dated: January 9, 2009

**The Ticktin Law Group, P.A.**
Attorneys for the Plaintiff
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, FL 33441
Telephone: (954) 570-6757
Facsimile: (954) 570-6760

By:   _____
PETER TICKTIN, ESQUIRE
FLORIDA BAR NO: 887935